**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| Hannah Michelle Israel,<br><br>Plaintiff,<br><br>v.<br><br>Trenton Ryan Garner,<br>in his individual capacity,<br><br>Defendant. | Case No.:<br>4:26-cv-00270-WMR |

**Brief in Support of Defendant Trenton Ryan Garner's Motion to Dismiss**

Late on the night of August 29, 2026, Cedartown police officers crossed Plaintiff's pasture in the dark, with a police dog and a fire department drone, in a search for a missing person.[1] Just after midnight, Officer Trenton Garner's body camera recorded a donkey running at a fellow officer.[2] Officer Garner raised his handgun and fired.[3]

Plaintiff's loss is real. But it does not support a § 1983 claim against Officer Garner. The Fourth Amendment does not protect an open pasture. It permits an officer to shoot an animal he reasonably believes poses an imminent threat to a

[1]Doc. 1 at ¶¶ 8-9, 22.
[2] *See* Ex. A.
[3]Doc. 1 at ¶¶ 14, 16; Ex. A at 12:10:25-29.

fellow officer. And the Due Process Clause adds nothing when the Fourth Amendment already governs and Georgia law already provides a remedy.

Officer Garner moves to dismiss on three independent grounds. First, Count I fails because the Fourth Amendment does not protect open fields, and Plaintiff pleads a pasture, not curtilage. Even if the pasture were curtilage, no clearly established law barred officers on a nighttime search for a missing person from crossing it. Second, Officer Garner is entitled to qualified immunity on Count II because he reasonably believed the donkey posed an imminent threat to a fellow officer, and no clearly established law told him to wait. Third, Count III fails because the Fourth Amendment governs the seizure of property, and Georgia's conversion statute provides all the process due. The first and third grounds turn on the Complaint alone. Only the second calls on the body-camera video, and the Eleventh Circuit permits the Court to consider it without converting this motion into one for summary judgment.[4]

## Statement of the Case

### A. The search.

According to the Complaint, the Cedartown Police Department "claims it was conducting a search for a missing person" on the night of August 29, 2026, and a supervisor later told Plaintiff that the officer had entered her property "while

[4] *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

looking for a missing person."[5] Between 10:30 p.m. and 1:00 a.m., Officer Garner and other officers, accompanied by a K-9 and/or a bloodhound, with the Rockmart fire department flying a drone, entered Plaintiff's property.[6] They crossed what Plaintiff calls her "enclosed pastureland."[7] Plaintiff alleges that they had no warrant and no consent.[8]

After the shooting, Plaintiff searched "the many acres of pastureland in darkness" for "a significant period of time" before she found the donkey.[9]

**B. The donkey.**

In the pasture, Officer Garner encountered Plaintiff's donkey.[10] He shot it.[11] The Complaint calls the donkey "young, small, and tranquil," and alleges that it "posed no threat" and was shot "without actual provocation."[12] Plaintiff was not there. She learned of the shooting later that night, by phone.[13]

**C. The body-camera recording.**

Officer Garner's body camera recorded the encounter.[14] It is night, and the only light comes from flashlights. Two officers are ahead of Officer Garner. One

---

[5]Doc. 1 at ¶¶ 8, 22.
[6]*Id.* at ¶ 9.
[7]*Id.* at ¶¶ 6, 10.
[8]*Id.* at ¶¶ 11-12.
[9]*Id.* at ¶¶ 25-26.
[10]*Id.* at ¶ 14.
[11]*Id.* at ¶ 16.
[12]*Id.* at ¶¶ 15, 47-48.
[13]*Id.* at ¶¶ 20-22.
[14]*See* Ex. A (manually filed, Doc. 7, Doc. 7-1, Doc. 8). Ex. A is the complete, unedited recording. Ex. C (Decl. of Hayley Loyd) at ¶¶ 4-6. Times cited are from the clock burned into

holds a dog on a leash.[15] By 12:10:25, the donkey is in the flashlight beam, moving toward the other officer. No dog is in view. The donkey keeps coming. By 12:10:27, Officer Garner has raised his handgun.[16] In the last second the donkey closes quickly, and by 12:10:28 it is less than a body length from the officer.[17] Officer Garner fires.[18] Within a second, the donkey wheels and moves off.[19]

Plaintiff sues Officer Garner in his individual capacity under 42 U.S.C. § 1983. Count I alleges that entering the pasture was an unreasonable search. Count II alleges that shooting the donkey was an unreasonable seizure. Count III, pled "[i]n the alternative" and only "if Defendant Trenton Ryan Garner's conduct is found to fall outside the protections of the Fourth Amendment," alleges a deprivation of property without due process.[20]

---

the top right of each frame, which reads August 30, 2026. *Id.* at ¶ 7. The file begins at 12:10:10, so 12:10:28 falls about 18 seconds in. The events cited appear at 12:10:15-34. Still frames are attached as Ex. B. They are uncropped, unenhanced frames from Ex. A at the times shown, and each can be checked against Ex. A's clock. Part 2.2 explains why the Court may consider the video. The camera keeps the thirty seconds of video before recording is activated, without audio, so audio begins at 12:10:40. Ex. C at ¶ 8.

[15] *Id.* at 12:10:15-20.

[16] *Id.* at 12:10:25-27.

[17] *Id.* at 12:10:27-28.

[18] *Id.* at 12:10:28.

[19] *Id.* at 12:10:29-34.

[20] Doc. 1 at ¶¶ 35-63.

## Standard of Review

To survive a motion to dismiss, a complaint must plead facts that plausibly show entitlement to relief.[21] The Court accepts well-pleaded facts as true. It does not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[22] Legal conclusions "are not entitled to the assumption of truth."[23]

Qualified immunity is immunity from suit, not merely a defense to liability, and it should be resolved at the earliest possible stage.[24] Once an officer shows that he acted within his discretionary authority, the burden shifts to the plaintiff to plead facts showing that the officer violated a constitutional right and that the right was clearly established at the time.[25] The Court may take either question first.[26] Plaintiff alleges that Officer Garner acted "in his capacity as a law enforcement officer" during a police search.[27] That is discretionary authority.[28]

---

[21]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[22]*Iqbal*, 556 U.S. at 678.
[23]*Id.* at 679.
[24]*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).
[25]*Plowright v. Miami-Dade Cnty.*, 102 F.4th 1358, 1363 (11th Cir. 2024); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).
[26]*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[27]Doc. 1 at ¶¶ 2-3, 8-9.
[28]*See, e.g., Plowright*, 102 F.4th at 1363-64 (requirement is "readily satisfied" by "police officers conducting arrest and investigative functions" (quoting *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019))).

## Argument and Citation of Authorities

### 1. Count I fails because the Fourth Amendment does not protect an open pasture.

#### 1.1 The Fourth Amendment does not reach open fields, fenced or not.

The Fourth Amendment protects "persons, houses, papers, and effects."[29] A pasture is none of those. For a century, the Supreme Court has held that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields."[30] A person "may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home."[31] The Fourth Amendment does not "prevent all investigations conducted on private property."[32] It "indicates with some precision the places and things encompassed by its protections," and open fields are not among them.[33]

A fence does not change the answer. Open fields "do not provide the setting for those intimate activities that the Amendment is intended to shelter," and "[i]t is not generally true that fences or 'No Trespassing' signs effectively bar the public

---

[29] U.S. Const. amend. IV.
[30] *Hester v. United States*, 265 U.S. 57, 59 (1924); *Oliver v. United States*, 466 U.S. 170, 176 (1984).
[31] *Oliver*, 466 U.S. at 178.
[32] *Florida v. Jardines*, 569 U.S. 1, 6 (2013).
[33] *Id.* (quoting *Oliver*, 466 U.S. at 176).

from viewing open fields in rural areas."[34] The Eleventh Circuit agrees: "there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage."[35] A fence around a 300-acre tract "does not create a constitutionally protected privacy interest in the open fields" inside it.[36] An open field "need be neither 'open' nor a 'field' as those terms are used in common speech."[37] It "may include any unoccupied or undeveloped area outside of the curtilage."[38]

What Plaintiff describes is a trespass: officers on her land without her permission.[39] But trespass law reaches intrusions the Fourth Amendment does not.[40] Whatever remedy trespass may supply, it is not a § 1983 claim.

### 1.2 Plaintiff's own allegations describe an open field.

Curtilage is the narrow exception: the area "immediately surrounding and associated with the home."[41] The question is whether the area is "so intimately tied

---

[34] *Oliver*, 466 U.S. at 179; *see also Dunn*, 480 U.S. at 304 ("no constitutional violation occurred here when the officers crossed over respondent's ranch-style perimeter fence, and over several similarly constructed interior fences.").
[35] *Maughon v. Bibb Cnty.*, 160 F.3d 658, 661 (11th Cir. 1998) (quoting *United States v. Berrong*, 712 F.2d 1370, 1374 (11th Cir. 1983)); *see United States v. Hatch*, 931 F.2d 1478, 1481 (11th Cir. 1991) (same rule (quoting *United States v. Long*, 674 F.2d 848, 852-53 (11th Cir. 1982))).
[36] *Hatch*, 931 F.2d at 1481; *see United States v. Dunn*, 480 U.S. 294, 304 (1987).
[37] *Oliver*, 466 U.S. at 180 n.11.
[38] *Id.*; *Hatch*, 931 F.2d at 1480.
[39] Doc. 1 at ¶¶ 11-12, 30.
[40] *See Oliver*, 466 U.S. at 183-84 & n.15.
[41] *Jardines*, 569 U.S. at 6 (quoting *Oliver*, 466 U.S. at 180).

to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."[42]

Plaintiff's own allegations answer that question. Seven times, she calls the land "enclosed pastureland."[43] She describes "many acres of pastureland," large enough that searching it in the dark took "a significant period of time."[44] That describes open land, not the area immediately surrounding a home.

Curtilage is a question of fact.[45] But on a motion to dismiss, the facts are the ones Plaintiff pleads, and hers describe a pasture.[46] Her allegation that she had "a reasonable expectation of privacy in her enclosed pastureland" does not point the other way.[47] It is a legal conclusion, and the Supreme Court has already rejected it: "no expectation of privacy legitimately attaches to open fields."[48]

### 1.3 At a minimum, no clearly established law barred officers from crossing the pasture.

Even if the question were closer, Officer Garner would be entitled to qualified immunity. A right is clearly established only when existing precedent places the question "beyond debate."[49] Only decisions of the Supreme Court, the

[42]*Dunn*, 480 U.S. at 301; *see Hatch*, 931 F.2d at 1480-82 (applying *Dunn*).
[43]Doc. 1 at ¶¶ 6, 10, 13, 31, 37-39.
[44]*Id.* at ¶¶ 25-26.
[45]*Hatch*, 931 F.2d at 1480.
[46]*See Iqbal*, 556 U.S. at 678.
[47]Doc. 1 at ¶ 37.
[48]*Oliver*, 466 U.S. at 180.
[49]*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Eleventh Circuit, and the Georgia Supreme Court count.[50] No such decision treats a livestock pasture as curtilage. The Supreme Court has held that even a barn sixty yards from a house, outside the fence around it, lies outside the curtilage.[51] And the Eleventh Circuit has held that officers who searched undeveloped land where neither owner lived would be entitled to qualified immunity, even if their warrant were invalid, because the search was "conducted on uninhabited property or an 'open field.'"[52]

### 1.4 Even if the pasture were curtilage, no clearly established law required officers on a nighttime search for a missing person to stop at the fence.

Officers may enter even a home without a warrant "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."[53] The test is objective. It requires "an objectively reasonable basis for believing" that "a person within [the house] is in need of immediate aid."[54] And for qualified immunity, the question is only "whether a reasonable officer could have believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed."[55]

---

[50]*See Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (the Supreme Court, the Eleventh Circuit, and, in that Florida case, the Florida Supreme Court).
[51]*Dunn*, 480 U.S. at 302-03; *see Hatch*, 931 F.2d at 1480-81 (describing *Dunn*).
[52]*Maughon*, 160 F.3d at 659, 661.
[53]*Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).
[54]*Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam) (first quoting *Brigham City*, 547 U.S. at 406; then quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)).
[55]*Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Plaintiff pleads that officers, with a K-9 and/or a bloodhound and a fire department drone, were in her pasture at night in what the department says was a search for a missing person.[56] She questions the exigency: the department only "claims" a search, and the person "was not located on Plaintiff's property."[57] But where a search ends is hindsight. Officers "do not need ironclad proof" before they act.[58] No binding decision holds that officers on a nighttime search for a missing person must stop at a pasture fence and wait for a warrant. Count I should be dismissed.

## 2. Officer Garner is entitled to qualified immunity on Count II because he reasonably believed the donkey posed an imminent threat to a fellow officer.

### 2.1 An officer may use deadly force against an animal he reasonably believes poses an imminent threat to himself or others.

Shooting a domestic animal is a seizure of its owner's property.[59] Officer Garner agrees. The question is whether the seizure was reasonable. The Eleventh Circuit answered that question in *Plowright*: "an officer may not use deadly force against a domestic animal unless that officer reasonably believes that the animal poses an imminent threat to himself or others."[60] The court drew that rule from cases recognizing that, "at least in some circumstances, it is reasonable for an

---

[56] Doc. 1 at ¶¶ 8-9, 22.
[57] *Id.* at ¶¶ 8, 13.
[58] *Fisher*, 558 U.S. at 49.
[59] *Plowright*, 102 F.4th at 1364-65.
[60] *Id.* at 1365-66.

officer to shoot a dog that he believes poses a threat to his safety or the safety of the community."[61] And the Fourth Amendment does not require officers to use "the least intrusive or even less intrusive alternatives."[62]

Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[63] It must account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."[64] A nighttime search in a dark pasture is such a circumstance.

### 2.2 The Court may consider the body-camera video without converting this motion.

Ordinarily, the Court considers only the Complaint. But "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."[65] The Eleventh Circuit applies that rule to police body-camera video.[66] Doing so does not convert the motion into one for summary judgment.[67]

---

[61] *Id.* at 1365 (quoting *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)).
[62] *Menuel v. City of Atlanta*, 25 F.3d 990, 996-97 (11th Cir. 1994) (quotation omitted).
[63] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[64] *Id.* at 396-97.
[65] *Johnson*, 107 F.4th at 1300.
[66] *Baker v. City of Madison*, 67 F.4th 1268, 1276-77 (11th Cir. 2023); *see Johnson*, 107 F.4th at 1300-01; *see also Swinford v. Santos*, 121 F.4th 179, 187-88 (11th Cir. 2024).
[67] *Baker*, 67 F.4th at 1276; *see* Fed. R. Civ. P. 12(d).

Both requirements are met. The video is central. It records the encounter and the shot, which are the whole of Count II.[68] And it is undisputed. It is Officer Garner's own body-camera footage, complete and unedited, stamped with the camera's clock.[69] Nothing suggests "that the footage has been altered in any way" or "that what the footage depicts differs from what actually happened."[70] That the Complaint never mentions the video does not keep it out.[71] Nor would an objection that the video misses an angle. Footage qualifies if it "clearly show[s] unedited footage of the event underlying" the claim.[72]

Whether to consider the video is within the Court's discretion.[73] The Court should exercise it here. Qualified immunity is meant to be resolved early, because it protects an officer from the burdens of "such pretrial matters as discovery."[74] The complete, unedited recording is before the Court. This is not *Jackson*, where the officers offered a "spliced" video that the district court found "not authenticated."[75]

---

[68] Doc. 1 at ¶¶ 14-16, 46-49; Ex. A at 12:10:25-29.
[69] Ex. A; Ex. C at ¶¶ 4-7.
[70] *Baker*, 67 F.4th at 1277; *Swinford*, 121 F.4th at 188.
[71] *See Johnson*, 107 F.4th at 1300.
[72] *Swinford*, 121 F.4th at 188.
[73] *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024).
[74] *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quoting *Mitchell*, 472 U.S. at 526) (emphasis omitted).
[75] *Jackson*, 97 F.4th at 1349.

When a video "is clear and obviously contradicts the plaintiff's alleged facts," the Court "accept[s] the video's depiction instead of the complaint's account."[76] That is not fact-finding. Courts are not required to rely on "visible fiction."[77] Where a video is ambiguous, the ambiguity goes to the plaintiff.[78] The Court can judge the frames for itself.[79]

If the Court prefers not to consider the video at this stage, Officer Garner asks in the alternative that the Court convert the motion as to Count II under Rule 12(d), limit discovery to the encounter itself, and set an expedited schedule for summary judgment. That course gives the Court a full record consistent with the purpose of qualified immunity.[80]

### 2.3 The video shows the donkey charging a fellow officer.

The Complaint labels the encounter: the donkey "posed no threat," and the shooting came "without actual provocation."[81] The video shows the encounter itself. It is night, and the only light comes from flashlights. By 12:10:25, the donkey is in the beam, moving toward a fellow officer. It keeps coming. By

---

[76]*Baker*, 67 F.4th at 1277-78; *Johnson*, 107 F.4th at 1301.
[77]*Baker*, 67 F.4th at 1278 (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).
[78]*Id.* at 1277.
[79]*See* Ex. B.
[80]Fed. R. Civ. P. 12(d); *see Swinford*, 121 F.4th at 194 (Calvert, J., concurring) (concerns about pre-ruling discovery "can be avoided by sharply narrowing the scope of discovery to those issues necessary for resolution of the converted motion").
[81]Doc. 1 at ¶¶ 15, 47-48.

12:10:27, Officer Garner has raised his handgun.[82] In the last second the donkey closes quickly, and by 12:10:28 it is less than a body length from the other officer.[83] Officer Garner fires while the donkey is that close.[84] Only then does the donkey wheel away.[85] Two frames, less than three seconds apart:



Ex. A at 12:10:26



Ex. A at 12:10:28

*Plowright* offers examples of unreasonable shootings. "Absent exigent circumstances," the court explained, it would be unreasonable to shoot an animal "barking from a safe distance away, from behind a barrier, or while moving away from any potential victims."[86] None of those describes this encounter. The donkey was not at a safe distance; it was within a body length. No barrier stood between it and the officer. And it was not moving away; it turned only after the shot.[87] The facts of *Plowright* itself were further still. There, the complaint alleged that the dog

---

[82]Ex. A at 12:10:25-27.
[83]*Id.* at 12:10:27-28.
[84]*Id.* at 12:10:28.
[85]*Id.* at 12:10:29-34.
[86]*Plowright*, 102 F.4th at 1366.
[87]Ex. A at 12:10:25-29; Ex. B.

was "wagging his tail" when one officer tased him, and was "incapacitated" and "incapable of harming anyone" when the other officer fired.[88]

Plaintiff alleges that the donkey posed no threat to the K-9 or the bloodhound.[89] That is beside the point. The dog was on a leash, held by another officer, and no dog is in view as the donkey closes.[90] The donkey ran at a person. The Court need not decide whether a threat to a police dog alone would justify deadly force.

Plaintiff may argue that the officers brought on the encounter by bringing dogs into her pasture. The Court considers the totality of the circumstances, including what came before the shot.[91] But the Supreme Court has rejected a "provocation rule" under which an earlier, separate Fourth Amendment violation (there, a warrantless entry) makes an otherwise reasonable use of force unreasonable.[92] Whether an officer's own creation of a dangerous situation counts at all is a question the Supreme Court has twice left open.[93] An open question is not clearly established law. And what came before here was lawful: officers looking for a missing person, in an open field, with a leashed dog.[94]

---

[88] *Plowright*, 102 F.4th at 1366.
[89] Doc. 1 at ¶¶ 15, 47.
[90] Ex. A at 12:10:15-20, 12:10:25-28.
[91] *See Barnes v. Felix*, 605 U.S. 73, 79-82 (2025).
[92] *County of Los Angeles v. Mendez*, 581 U.S. 420, 423, 427-29 (2017).
[93] *Barnes*, 605 U.S. at 83-84 (citing *Mendez*, 581 U.S. at 429 n.*).
[94] Doc. 1 at ¶¶ 8-9, 22; Ex. A at 12:10:15-20.

On those facts, a reasonable officer would believe the donkey posed an imminent threat to a fellow officer. Officer Garner had seconds to decide.[95] The Fourth Amendment did not require him to wait until the donkey reached its target.[96] The question is not what the donkey intended. It is what a reasonable officer could perceive in the second he had, without "the 20/20 vision of hindsight."[97] And qualified immunity protects even a reasonable mistake of fact.[98]

### 2.4 No clearly established law told Officer Garner to wait.

*Plowright* clearly established a rule: an officer may not shoot a domestic animal unless he reasonably believes it poses an imminent threat. Officer Garner does not dispute that rule. But clearly established law is not defined "at a high level of generality."[99] The question is whether existing precedent placed "beyond debate" that an officer could not shoot an animal closing fast on a fellow officer, at close range, in the dark.[100] No binding decision says so.[101] *Plowright* points the other way. It permits deadly force when the officer reasonably believes the animal poses an imminent threat to others.[102]

---

[95] Ex. A at 12:10:25-28.
[96] *See Graham*, 490 U.S. at 396-97.
[97] *Id.* at 396.
[98] *Pearson*, 555 U.S. at 231.
[99] *al-Kidd*, 563 U.S. at 742.
[100] *Id.* at 741; *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).
[101] *See Terrell*, 668 F.3d at 1255.
[102] *Plowright*, 102 F.4th at 1365-66.

*Plowright* denied immunity on the facts its complaint alleged: the shooting of "an incapacitated, non-threatening domestic animal during a 911 investigation."[103] Each of the court's obvious-clarity rationales depended on those facts.[104] And the court noted that "the officers' bodycam footage or other evidence may later introduce facts that take this case outside of the 'narrow' obvious clarity exception."[105] The video here does that. An animal running at a fellow officer is neither incapacitated nor non-threatening.[106] A shot fired in seconds to protect a fellow officer is not conduct "so bad that case law is not needed to establish that the conduct cannot be lawful."[107] Count II should be dismissed.

**3. Count III fails because the Fourth Amendment governs the seizure, and Georgia provides an adequate remedy.**

Count III is pled "[i]n the alternative," and only "if Defendant Trenton Ryan Garner's conduct is found to fall outside the protections of the Fourth Amendment."[108] It does not fall outside them. The Eleventh Circuit has held that shooting a domestic animal is a Fourth Amendment seizure, and Officer Garner agrees that it was one here.[109] The open-fields doctrine does not change that. It

---

[103] *Id.* at 1367.
[104] *Id.* at 1366-67.
[105] *Id.* at 1367.
[106] Ex. A at 12:10:25-28.
[107] *Plowright*, 102 F.4th at 1367 (quoting *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017)) (internal quotation marks omitted).
[108] Doc. 1 at ¶ 56.
[109] *Plowright*, 102 F.4th at 1364-65.

governs the land, not the animal. A donkey is an "effect," and its seizure is a Fourth Amendment question wherever it stands.[110] So Count III never comes into play. It also fails on its own terms, twice over.

### 3.1 The Fourth Amendment, not substantive due process, governs a seizure.

Where the Fourth Amendment "provides an explicit textual source of constitutional protection" against the conduct at issue, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[111] The rule reaches any claim "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment."[112] A seizure of property is covered by the Fourth Amendment. Plaintiff's allegation that the shooting "shocks the conscience" adds nothing.[113]

### 3.2 Georgia's conversion statute supplies all the process due.

Procedural due process fares no better. A state employee's "unauthorized intentional deprivation of property" does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available."[114] A procedural due

---

[110] *See id.* (domestic animals are "effects").
[111] *Graham*, 490 U.S. at 395.
[112] *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).
[113] Doc. 1 at ¶ 62.
[114] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see Parratt v. Taylor*, 451 U.S. 527, 541 (1981).

process claim does not arise when the deprivation occurs. It arises only if the State refuses to provide a process sufficient to remedy it.[115]

Georgia provides that process, and the common law provided it first. Blackstone listed "shooting his dogs, poisoning his cattle" among injuries to personal property "too obvious to need explication," for which "the plaintiff shall recover damages, in proportion to the injury."[116] Georgia's Code carries that remedy forward: "The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."[117] The Eleventh Circuit has held that this statute "covers the unauthorized seizure of personal property by police officers."[118] That a state-law claim may face defenses does not make the remedy inadequate. A state remedy is adequate even if it "may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983."[119]

Plaintiff tries to plead around the rule by calling the shooting "deliberate and not merely negligent or the result of a random, unauthorized act."[120] *Hudson* governs intentional deprivations; that was its holding.[121] And "random and

---

[115] *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).
[116] 3 William Blackstone, *Commentaries* *152-53.
[117] O.C.G.A. § 51-10-1.
[118] *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (quoting *Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987)).
[119] *Parratt*, 451 U.S. at 543-44.
[120] Doc. 1 at ¶ 59.
[121] *Hudson*, 468 U.S. at 533.

unauthorized" asks whether the State could have provided a hearing before the deprivation, not whether the officer meant to act. *Zinermon*, which marks the limit of *Hudson* and *Parratt*, involved the opposite: a predictable deprivation, at a set point in an established procedure, by officials the State had empowered to cause it.[122] No State can schedule a hearing before an officer in the field decides whether to use force against an animal. Plaintiff alleges no policy that authorized the shooting and no official empowered to order it. Georgia's remedy is the process due. Count III should be dismissed.

**Conclusion**

Officers searching for a missing person crossed an open pasture. A donkey ran at one of them, and Officer Garner fired. The Fourth Amendment does not protect the pasture. It permitted the shot. And Georgia law, not the Due Process Clause, supplies the remedy for the loss. The Court should dismiss Counts I, II, and III with prejudice under Rule 12(b)(6).[123] In the alternative, if the Court declines to consider the video at this stage, it should convert the motion as to Count II, limit discovery to the encounter, and set an expedited schedule for summary judgment.

[122] *See Zinermon v. Burch*, 494 U.S. 113, 136-39 (1990).
[123] *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (court need not grant leave to amend sua sponte when a counseled plaintiff never moved to amend or requested leave).

Respectfully submitted,

/s/J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendant*

J. Scott Key, LLC
199 West Jefferson Street
Madison, Georgia 30650
(678) 610-6624
scott@scottkeylaw.com

**Certificate of Compliance**

I certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B), and that it is double-spaced as required by Local Rule 5.1(C)(2).

Respectfully submitted,

/s/J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendant*

J. Scott Key, LLC
199 West Jefferson Street
Madison, Georgia 30650
(678) 610-6624
scott@scottkeylaw.com

**Certificate of Service**

I certify that on October 7, 2026, I electronically filed the foregoing Brief in Support of Defendant Trenton Ryan Garner's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to counsel of record:

Christopher Lee McCormick
*Attorney for Plaintiff*
The McCormick Firm, P.C.
105 Pilgrim Village Drive, Suite 400
Cumming, GA 30040
(678) 667-7925
chris@mccormickfirmpc.com

Solomon M. Radner
*Attorney for Plaintiff, Pro Hac Vice*
Radner Law Group PLLC
17515 West Nine Mile Road, Suite 1050
Southfield, MI 48075
(877) 723-6375
solomon@radnerlawgroup.com

Respectfully submitted,

/s/J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendant*

J. Scott Key, LLC
199 West Jefferson Street
Madison, Georgia 30650
(678) 610-6624
scott@scottkeylaw.com